UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M&T CAPITAL AND LEASING CORPORATION,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NORTHPOINT TRANSPORTATION INC, ET AL.,<br><br>　　　　Defendant. | No. 2:23-cv-00656-JAM-CKD<br><br>ORDER |

　　　Plaintiff M&T Capital and Leasing Corporation seeks default judgment for breach of contract against defendants Northpoint Transportation Inc., Jasvir Kaur, and Amandeep K. Dhami in the amount of $2,231,994.25, plus 18% post-judgment interest. (See ECF Nos. 1, 10.) The undersigned took plaintiff's motion under submission without oral argument in accordance with Eastern District Local Rule 230(g). (ECF No. 12.)

　　　Upon review of plaintiff's motion and supporting documents, the undersigned orders that plaintiff file further briefing and evidence within thirty dates of this order.

////

////

1

## I. Background

Plaintiff is a Connecticut corporation with its principal place of business in Connecticut. (ECF No. 1 at ¶ 1.) Defendant Northpoint Transportation Inc. ("Northpoint") is a California corporation with its principal place of business in California; defendants Jasvir Kaur and Amandeep K. Dhami are citizens of California. (Id. at ¶¶ 2-4.) On or about February 8, 2022, plaintiff made various loans to defendant Northpoint to purchase transportation equipment.[1] (Id. at ¶¶ 7-21.) The loans were guaranteed by defendants Kaur and Dhami. (Id. at ¶¶ 25, 26.) Defendants granted plaintiff a first-priority security interest in the transportation equipment and agreed to repay the loans pursuant to the terms of the loan documents. (Id. at ¶ 8.) (See also, ECF No. 1-1, ¶ 3.)

Under the loan agreement, in the event of default, defendants agreed to pay plaintiff (a) all unpaid periodic installment payments plus late charges, if any, (b) the present value (using a 2% per annum discount rate) of all unmatured installments due and (c) interest the rate of one and one-half percent (1.5%) per month. (ECF No. 1-1, 8, ¶ 15.) In addition, defendants would owe "any expenses paid or incurred by plaintiff in connection with the enforcement of its rights including the repossession, transporting, holding, insuring, repairing, refurbishing, preparing for sale and subsequent sale, lease or other disposition of the Collateral including reasonable attorney fees and legal expenses (collectively, 'Repossession Expenses')." (Id.)

While plaintiff performed its obligations under the loan documents by providing the loan which was used to purchase transportation equipment (e.g., tractors, trailers, trucks), defendants failed to make all payments when due and thus defaulted under the agreement. (See ECF No. 1 at ¶¶ 27, 33.) Despite plaintiff's demands, defendants have failed to cure the defaults. (Id. at ¶¶ 31, 34.)

Plaintiff filed this action against defendants on April 7, 2023, seeking damages for breach of contract and a writ of possession. (ECF No. 1.) Plaintiff served defendants with process and

---

[1] Plaintiff's predecessor, People's Capital subsequently became a subsidiary of plaintiff by merger and amended its name to M&T Capital and Leasing Corporation. (ECF No. 1 at ¶¶ 28–30.)

2

sought entry of default judgment. (ECF No. 4, 7.) The clerk of court entered default against defendants on May 31, 2023. (ECF No. 8.)

Plaintiff repossessed its equipment and successfully sold 28 out of 29 units of the equipment. (ECF No. 10 at ¶¶ 31, 32.) Plaintiff filed the instant motion on September 13, 2023, seeking damages for breach of contract against defendants, jointly and severally. (Id.) To date, none of the defendants have entered an appearance or submitted a responsive pleading.

I.   Legal Standards

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court considers the following factors: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

Generally, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987). In addition, although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)).

II.   Discussion

   A.   Jurisdiction

In considering whether to enter default judgment, a district court must first determine whether it has jurisdiction over the subject matter and the parties to the case. In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999). In its complaint, plaintiff asserted the existence of diversity jurisdiction. (ECF No. 1 at ¶¶ 5-6.) Plaintiff has properly alleged that the amount in controversy exceeds $75,000. (Id. at ¶ 5.) For purposes of diversity jurisdiction, an individual is a citizen of the state in which that individual is domiciled. Kanter v. Warner–Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001). A corporation is a citizen of the state where it is incorporated and the state where it has its principal place of business. 3123 SMB LLC v. Horn, 880 F.3d 461, 462–63 (9th Cir. 2018).

Plaintiff alleges it is a corporation with its principal place of business in Connecticut. (ECF No. 1 at ¶ 1.) Plaintiff alleges that defendant Northpoint Transportation Inc. is a California corporation with its principal place of business in Yuba City, California. (Id. at ¶ 2.) Plaintiff alleges that defendants Jasvir Kaur ("Kaur") and defendant Amandeep K. Dhami ("Dhami") are domiciled in and citizens of California. (Id. ¶¶ 3-4.) Accordingly, complete diversity exists among the parties and the court has subject matter jurisdiction.

   B.   Service of Process

Personal jurisdiction requires notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950). "A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under [Federal Rule of Civil Procedure 4]." Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc., 840 F.2d 685, 688 (9th Cir. 1988). Here, plaintiff completed service of process on defendants by substitute service on April 19, 2023. (ECF No. 4.)

////

////

4

### C. Eitel Factors

Courts in this circuit use the Eitel factors to determine whether to grant default judgment. The Eitel factors are: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel, 782 F.2d at 1471-72.

#### 1. Factor One: Possibility of Prejudice to Plaintiff

Potential prejudice to the plaintiff weighs in favor of granting default judgment. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Here, plaintiff filed suit on April 7, 2022 and defendants have failed to appear, respond to the complaint, or otherwise put forth a defense in this action. Without default judgment, the litigation would remain at a standstill, prejudicing plaintiff. Accordingly, the first factor weighs in favor of default judgment.

#### 2. Factors Two and Three: The Merits of the Substantive Claim and the Sufficiency of the Complaint

Factors two and three are considered together due to the relatedness of the inquiries. The court must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175. Under Connecticut law, the elements of a breach of contract claim are 1) the formation of an agreement, 2) performance by one party, 3) breach of the agreement by the other party, and 4) damages. Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C., 311 Conn. 282, 291, 87 A.3d 534 (2014). (See also ECF No. 1-1 at 11, ¶ 19, stating that the loan agreement shall be governed and construed under the laws of Connecticut.) Each of these elements has been met. First, the complaint alleges that plaintiff made loans to defendant Northpoint, as guaranteed by defendants Kaur and Dhami, to purchase certain trucking equipment. (ECF No. 1 at ¶¶ 7-26.) In exchange, defendants granted plaintiff a first-priority security interest in the equipment and agreed to repay the loans. (Id.) Second, plaintiff alleges having performed all obligations under the contract. (See id. at ¶ 33.) Third, plaintiff alleges that defendant defaulted under the terms of

the loan documents by failing to make all payments when due. (Id. at ¶ 27.) Finally, the complaint alleges that plaintiff suffered damages because of the breach. (Id. at ¶ 32.) These allegations are sufficient to allege a breach of contract claim under Connecticut law. Therefore, the second and third Eitel factors favor default.

### 3. Factor Four: The Sum of Money at Stake

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1176-77; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). "This requires . . . the court [to] assess whether the recovery sought is proportional to the harm caused by [the] defendant's conduct." Landstar Ranger, Inc. v. Parth Enters., Inc., 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010).

The sum of money plaintiff seeks to recover is $2,231,994.25 as of August 30, 2023, which reflects the amounts due under the loan documents after application of the sale proceeds from the sale of the equipment, plus attorneys' fees and default interest. As discussed below, the court is not satisfied that "the requested amounts have evidentiary support, are specifically tailored to the misconduct of the defendant, and are otherwise proportionate to the defendant's offenses." See BR N. 223, LLC v. Glieberman, 2012 WL 639500, at *5-7 (E.D. Cal. Feb. 27, 2012). Accordingly, this factor weighs against default judgment.

### 4. Factor Five: The Possibility of a Dispute Concerning Material Facts

Where the clerk has entered default and defendant has not appeared, there is no likelihood that any genuine issue of material fact exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177. Here, the clerk of court entered default against defendants on May 31, 2023, and defendants have not appeared. (ECF No. 8.) Accordingly, there is no likelihood that a genuine issue of material fact exists. Therefore, the fifth Eitel factor favors entry of default judgment.

     5. Factor Six: Whether the Default Was Due to Excusable Neglect

 Defendants' default is not due to excusable neglect.  Plaintiff sent a notice to default to defendants prior to initiating this action.  (ECF No. 1-3 at 74-76.)  Defendants were properly served with the summons and complaint but have failed to appear. (See ECF Nos. 4, 5.) See Shanghai Automatic Instrument Co., Ltd. v. Kuei, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) Accordingly, the sixth Eitel favor weighs in favor of a default judgment.

     6. Factor Seven: The Strong Policy Favoring Decisions on the Merits

 "Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472.  However, this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action.  PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010).  Accordingly, the policy does not, by itself, preclude the entry of default judgment.

 Pursuant to the above analysis, the Eitel factors weigh in favor of entering default judgment for breach of contract against defendants.

  D. Remedies

    1. Damages

 To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit.  Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc., 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005); see PepsiCo, Inc., 238 F. Supp. 2d at 1175.  Here, plaintiff seeks $2,231,994.24 in damages, which represents the outstanding balance as of August 30, 2023, and includes default interest, costs, expenses, and attorneys' fees, minus the sale proceeds.  (See ECF No. 10-2, ¶ 33.)  Under the loan agreement, in the event of default, defendants owe plaintiff (a) all unpaid periodic installment payments plus late charges, if any, (b) the present value (using a two percent per annum (2%) discount rate) of all unmatured installments due and (c) interest the rate of one and one-half percent (1.5%) per month.  (ECF No. 1-1, 8, ¶ 15.)  The agreement also provides for reasonable attorney fees and legal expenses upon default.  (Id.)

Plaintiff has submitted affidavits and account statements setting forth attorneys' fees totaling $25,319.03, which accounts for $20,806.53 in fees for Evan S. Goldstein (ECF No. 10-7 at 3, ¶ 4) and $4,512.50 for W. Scott Cameron. (ECF No. 10-6 at 4, ¶ 17.) In addition, plaintiff submitted a true and correct copy of an Account Balance Worksheet showing the following calculations:

| | |
|---|---|
| TOTAL ACCELERATED BALANCE | $3,965,231.44 |
| LATE FEES | $16,130.97 |
| INTEREST ($1,955.46 per diem) | $300,812.81 through 8.30.23 |
| REPAIRS | $2,500.00 |
| OTHER FEES | $14,000.00 |
| SALE PROCEEDS | ($2,092,000.00) |
| ---------------------------------------------------------------------------- | |
| BALANCE | $2,206,675.22 |

(See ECF No. 10-5 at 75.) The $2,206,675.22 balance shown on the Account Balance Worksheet, plus the $25,319.03 in attorneys' fees, equals plaintiff's request for $2,231,994.25 in damages. However, as discussed below, plaintiff has not provided enough information about certain charges and fees for the court to determine that such charges and fees should support the basis of an award.

First, plaintiff claims defendant owes $14,000 in "other fees," but has not provided any information or explanation of these fees. (Id.) Second, the Account Balance Worksheet shows defendant owes $16,130.97 in late fees. (Id.) While the defaulting parties have agreed to pay late fees, plaintiff has not explained how these fees were determined. Plaintiff should inform the court what the "other fees" represent and explain how the late fees are calculated to justify these charges.

Third, plaintiff's interest calculation requires further explanation. The Account Balance Worksheet includes an "18% per diem" calculation under each schedule and that defendant owes $300,812.81 in interest, which equates to $1,955.46 per diem. (Id.) Plaintiff should explain how

8

it determined the amount of interest owed, given that the loan agreement provides that defendants shall pay 1.5 % interest per month upon default. (See ECF No. 1-1 at 8, ¶ 15.)

### 2. Post Judgment Interest

Finally, plaintiff requests post-judgment interest at a rate of 18% per annum. This rate is unsupported and appears excessive. (ECF No. 10-1 at 8.) The post-judgment interest rate is set "at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding ... the date of the judgment." 28 U.S.C. § 1961(a). Plaintiff may provide further support for its requested rate in additional briefing.

### III. Conclusion and Order

In conclusion, the undersigned finds that the Eitel factors weigh in favor of default judgment. However, as plaintiff did not submit sufficient evidence and information to support the damages sought, plaintiff shall submit additional evidence and briefing within thirty days of this order. Plaintiff shall immediately serve this order on defendants and shall also serve any additional evidence and briefing at the time of filing. Plaintiff is ordered to file proofs of service.

IT IS SO ORDERED.

Dated:  February 20, 2024

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

21,mtca.0656