UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M&T CAPITAL AND LEASING CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>NORTHPOINT TRANSPORTATION INC, ET AL.,<br><br>Defendant. | No. 2:23-cv-00656-JAM-CKD<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff filed this breach of contract action against defendants Northpoint Transportation, Inc., (Northpoint) Jasvir Kaur, and Amandeep K. Dhami on April 7, 2023, and moved for default judgment on September 13, 2023.  (ECF Nos. 1, 10.)  Plaintiff filed supplemental briefing and evidence on March 21, 2024. (ECF Nos. 14, 15.)

For the reasons set forth below, the undersigned recommends that plaintiff's motion for default judgment be granted in part.

////

////

////

1

I.  Background

On or about February 8, 2022, plaintiff M&T Capital and Leasing Corporation made a number of loans to defendant Northpoint to purchase transportation equipment.[1] (Id. at ¶¶ 7–21.) The loans were guaranteed by defendants Kaur and Dami.[2] (Id. at ¶¶ 25, 26.) Defendants granted plaintiff a first-priority security interest in the transportation equipment and agreed to repay the loans pursuant to the terms of the loan documents. (Id. at ¶ 8.) (See also, ECF No. 1-1 at ¶ 3.)

In the event of default, defendants agreed to pay plaintiff (a) all unpaid periodic installment payments plus late charges, if any, (b) the present value (using a 2% per annum discount rate) of all unmatured installments due and (c) interest the rate of one and one-half percent (1.5%) per month, which is the equivalent of 18% (1.5 x 12) per annum. (ECF No. 1-1, 8 at ¶ 15.) In addition, defendants would owe "any expenses paid or incurred by plaintiff in connection with the enforcement of its rights including the repossession, transporting, holding, insuring, repairing, refurbishing, preparing for sale and subsequent sale, lease or other disposition of the Collateral including reasonable attorney fees and legal expenses (collectively, 'Repossession Expenses')." (Id.)

While plaintiff performed its obligations under the loan documents by providing the loan which was used to purchase transportation equipment (e.g., tractors, trailers, trucks), defendants failed to make all payments when due and thus defaulted under the agreement. (See ECF No. 1 at ¶¶ 27, 33.) Despite plaintiff's demands, defendants have failed to cure the defaults. (Id. at ¶¶ 31, 34.)

////

////

////

---

[1] Plaintiff's predecessor, People's Capital subsequently became a subsidiary of plaintiff by merger and amended its name to M&T Capital and Leasing Corporation. (ECF No. 1 at ¶¶ 28–30.)

[2] The undersigned took plaintiff's motion under submission without oral argument in accordance with Eastern District Local Rule 230(g). (ECF No. 12.)

2

II. Analysis

A. Default Judgment

In its February 20, 2024, order, the court found that jurisdiction existed over the parties and subject matter in this action. (ECF No. 13 at 4.) The court also found that the following Eitel factors weighed in favor of entering default judgment: possibility of prejudice to plaintiff, the merits of the substantive claim and the sufficiency of the complaint, the possibility of a dispute concerning material facts, factor six: whether the default was due to excusable neglect. (Id. at 5.) The court found that the sum of money at stake weighed against entry of default judgment because the request for damages was not sufficiently supported by briefing and evidence. (Id. at 6.) The court also found that the strong policy in favor of decision on the merits did not preclude the entry of default judgment. (Id. at 7.) The court balanced these factors and found that they weighed in favor of entering default judgment for breach of contract against defendants. (Id.) Upon consideration of plaintiff's supplemental briefing and support for its damages claim, the court's conclusion that the Eitel factors weigh in favor is not altered.

B. Remedies

To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit. Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc., 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005); see PepsiCo, Inc., 238 F. Supp. 2d at 1175. Here, plaintiff seeks $2,231,994.24 in damages, which represents the outstanding balance as of August 30, 2023, and includes default interest, costs, expenses, and attorneys' fees, minus the sale proceeds. (See ECF No. 10-2, ¶ 33.) Under the loan agreement, in the event of default, defendants owe plaintiff (a) all unpaid periodic installment payments plus late charges, if any, (b) the present value (using a two percent per annum (2%) discount rate) of all unmatured installments due and (c) interest the rate of one and one-half percent (1.5%) per month. (ECF No. 1-1, 8, ¶ 15.)

//////

//////

3

1. Account Balance

Plaintiff submitted a true and correct copy of an Account Balance Worksheet showing the following calculations:

| | |
|---|---|
| TOTAL ACCELERATED BALANCE | $3,965,231.44 |
| LATE FEES | $16,130.97[3] |
| INTEREST ($1,955.46 per diem) | $300,812.81 through 8.30.23[4] |
| REPAIRS | $2,500.00 |
| OTHER FEES | $14,000.00[5] |
| SALE PROCEEDS | ($2,092,000.00) |
| ---------------------------- | ---------------------------- |
| BALANCE | $2,206,675.22 |

(See ECF No. 10-5 at 75.)

Plaintiff has supplemented the motion with additional costs incurred since the filing the motion for default judgment totaling $131,745.57. (See ECF No. 14 at 2, stating that M&T has incurred additional fees "for appraisals of the collateral, storage, inspections, and sales commissions" totaling $46,022.00; $46,678.00 in costs for repossession services; and $39,045.57 for repairs made to the equipment). The court finds that these costs are reasonable and should be awarded. Further, defendants have not responded or otherwise objected to these adjustments.

---

[3] Pursuant to Paragraph 5 of the Master Loan Agreement, when any payment is more than five (5) days late, M&T may charge a late fee equal to five percent (5%) of the defaulted payment. Accordingly, M&T has assessed late fees equal to 5% of all past due payments owed by the Defendants.

[4] Pursuant Paragraph 5 of the Master Loan Agreement, default interest is one and one-half percent (1.5%) per month, which is the equivalent of 18% (1.5 x 12) per annum. The Account Balance Worksheet provides a calculation of the per diem default interest based on 18% per annum. The per diem rate is calculated by multiplying the accelerated balance by 18% per annum and then dividing by 365 days. (See ECF No. 1-1 at 8, ¶ 15.)

[5] As set forth in plaintiff's additional briefing, M&T's request for "other fees" in the amount of $14,000.00 consists of fees for appraisals of the collateral, storage, inspections, and sales commissions. (ECF No. 14 at 1.)

Plaintiff requests post-judgment interest at a rate of 18% per annum. (ECF No. 10 at 3.) Post-judgment interest is governed by federal law. Northrop Corp. v. Triad Int'l Mktg. S.A., 842 F.2d 1154, 1155 (9th Cir.1988). The rate of post-judgment interest is determined under 28 U.S.C. § 1961 which provides that "[s]uch interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding ... the date of the judgment." Thus, rather than plaintiff's request for the higher interest rate of 18%, post-judgment interest should be set at the federal rate to be determined at the time of judgment for the calendar week preceding that date.

2.  Attorney's Fees for Local Counsel

Plaintiff requests $4,512.50 in legal fees for W. Scott Cameron, which is based on 9.5 hours of legal services at $475 per hour. (ECF No. 10-6 at 4, ¶ 17.) To determine a reasonable attorneys' fee, or "lodestar," the starting point is the number of hours reasonably expended multiplied by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The court, in considering what constitutes a reasonable hourly rate, looks to the prevailing market rate in the relevant community. Blum v. Stenson, 465 U.S. 886, 895 (1984)

Here, plaintiff has submitted billing records evidencing the hours expended by Mr. Cameron. (ECF No. 10-6.) While neither the briefing nor attached declaration address why $475 is a reasonable hourly rate, the court takes judicial notice of the California state bar website indicating that Mr. Cameron was admitted to the bar in January 2004, and thus has twenty years of experience. Accordingly, the undersigned finds that Mr. Cameron's rates are reasonable. Seebach v. BMW of N. Am., LLC, 2020 WL 4923664 at *3 (E.D. Cal. Aug. 21, 2020) (awarding the hourly rates of $200 for an attorney who had been admitted to practice less than two years, and $505 for an attorney "with roughly 20 years of experience" in 2020). See also BMO Harris Bank N.A. v. BKSG Transportation LLC, 2018 WL 4297854 at *10 (E.D. Cal. Sept. 10, 2018) (taking judicial notice of California State Bar website for purposes of determining attorney's experience). Further, the court has reviewed Mr. Cameron's billing statements and finds that the number of hours expended are not excessive, redundant, or otherwise unnecessary, and are also

reasonable. Hensley, 461 U.S. at 437. Accordingly, the undersigned recommends that plaintiff be granted $4,512.50 in attorneys' fees, to be paid to Mr. Cameron.

### 3. Attorneys' Fees for Out-of-State counsel

Plaintiff seeks to recover $20,806.53 in legal fees and costs for services by the following individuals at Updike, Kelly & Spellacy, P.C. ("UKS"): attorney Evan S. Goldstein, attorney Olivia Benson, attorney Adam Marks, and paralegal Gina Gorty. (ECF No. 10-6.) None of the attorneys at UKS entered notices of appearances, none are barred in California, and none of the attorneys have been admitted pro hac vice.[6]

The Ninth Circuit has held that when out-of-state counsel do not "properly and timely secure pro hac vice admission before the district court" in accordance with the district court's local rules, that failure is "sufficient reason to deny [an applicant's] application for attorneys' fees." See Idaho Sporting Congress, Inc. v. Alexander, 23 Fed.Appx. 713, 714 (9th Cir. 2001) ("Failure...to properly and timely secure pro hac vice admission before the district court was a sufficient reason to deny [plaintiffs'] application for attorney's fees."). Exceptions exist. In Winterrowd v. American General Annuity Insurance Co., the Ninth Circuit determined that out-of-state attorneys who have not applied to appear pro hac vice may recover fees in two circumstances: (1) if the attorney at issue "would have certainly been permitted to appear pro hac vice as a matter of course had he or she applied"; or (2) if the work of the attorney "did not rise to the level of 'appearing' before the district court." 556 F.3d 815, 822–23 (9th Cir. 2009).

Here, none of the circumstances in Winterrowd are present. First, none of the out-of-state attorneys demonstrate that they meet the requirements for pro hac vice admission pursuant to L.R. 180(b)(2), or even address pro hac vice admission in their declaration.[7] Phillips 66 Co. v.

---

[6] The cover sheet of the instant motion and the cover sheet of Mr. Goldstein's declaration indicates that pro hac vice admission is pending, but the docket does not reflect pending pro hac vice admission. (ECF No. 10 at 1; ECF No. 10-6 at 2.)

[7] Plaintiff fails to show that the out-of-state attorneys "would have certainly been permitted to appear pro hac vice as a matter of course had he or she applied." Winterrowd, 556 F.3d 815, 822–23. None of these three attorneys (1) submitted a certificate showing that they are an active member in good standing of another bar; (2) agreed to abide by the Standard of Professional Conduct; or (3) paid or indicated a willingness to pay the admission fee. See L.R. 180(b)(2)

Grainer, 2015 WL 3797396, at *4 (E.D. Cal. June 18, 2015) (awarding attorneys' fees to non-admitted attorneys where none of the attorneys signed pleadings, or personally appeared in this action and where the attorneys submitted declarations submitted indicate that these attorneys would have been admitted pro hac vice had they applied.)

Second, plaintiff has not shown that the work of the attorneys rose "to the level of 'appearing' before the district court." Winterrowd, 556 F.3d at 822–23. An out-of-state attorney's representation rises to the level of appearing before the district court where the out-of-state attorney is the exclusive contact in a case with the client. Id. ("an out-of-state attorney must still apply for pro hac vice admission if that attorney appears in court, signs pleadings, or is the exclusive contact in a case with the client or opposing counsel").

Here, the out-of-state attorneys communicated extensively with plaintiff. (See ECF No. 10-6 at 14–40, billing statements with numerous time entries reflecting communications with Robert Van Tine, plaintiff's senior vice president between February 2023 and August 2023.) In contrast, there is no indication that local counsel communicated with plaintiff at all. Local counsel's declaration makes no mention of his contacts with plaintiff, stating "in my role as local counsel, I have reviewed and edited the complaint filed, effected service of the complaint and summons on all defendants, and performed the work necessary to enter defaults when the defendants failed to respond to the complaint." (ECF No. 10-7 at 3, ¶ 3.) Local counsel's billing statement also does not reflect any communications with plaintiff. (Id. at 6.)

Thus, upon review of the billing statements and declarations by local counsel and out-of-state counsel, out-of-state counsel had exclusive contact with plaintiff and therefore did "rise to the level of 'appearing' before the district court." Winterrowd, 556 F.3d 822–23. Because plaintiff seeks to recover attorneys' fees for out-of-state counsel who have not been admitted pro hac vice, the undersigned declines to recommend that plaintiff's request for attorneys' fees and costs for out-of-state counsel be granted.

---

(listing requirements for pro hac vice admission). Nor have the three attorneys indicated whether they would be disqualified from pro hac vice admission based on residing in or regularly practicing law in California.

# **FINDINGS AND RECOMMENDATIONS**

Accordingly, it is HEREBY RECOMMENDED that:

1. Plaintiff's motion for default judgment against defendant (ECF No. 10) be GRANTED in PART;
2. Plaintiff be awarded final judgment in the amount of $2,342,933.29;[8]
3. Plaintiff be awarded pre-judgment interest from August 30, 2023, through entry of judgment at a rate of 18 % per annum and based on a 365-day year (a daily rate of approximately $1,955.46);
4. Plaintiff be awarded post-judgment interest at the federal rate; and
5. Plaintiff's request to recover attorneys' fees for out-of-state counsel who have not been admitted pro hac vice be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated:  April 24, 2024

/s/ Carolyn K. Delaney<br>
CAROLYN K. DELANEY<br>
UNITED STATES MAGISTRATE JUDGE

21,mtca.0656

---

[8] This amount represents $2,206,675.22 balance, as reflected in the account balance worksheet, $4,512.50 in attorney's fees for Mr. Cameron, and $131,745.57 in costs incurred since filing this motion.